Good morning. May it please the Court, my name is Sarah Stone, and I represent the appellant, Rudy Apelt, in this case. Good morning. You've got 15 minutes. Thank you. And I'm going to do my best to watch my time and reserve three minutes for rebuttal. Great. The threshold question before this Court is, does Mr. Apelt's case present the narrow and unique circumstances that permit departure from traditional Strickland analysis and support applying Lockhart v. Fretwell? We submit that it does not, that the district court erred in doing so, and that under traditional Strickland analysis, Mr. Apelt is entitled to relief. The United States Supreme Court was very clear in Lockhart v. Fretwell that this was a limited exception to the traditional Strickland analysis, and that it was for narrow circumstances where a petitioner's claim was based on a right not recognized by law. Justice O'Connor thought that this distinction was important enough to write a separate concurring opinion where she said, quote, in the vast majority of cases, Fretwell will have no effect on the prejudice inquiry under Strickland. And Mr. Apelt's case is one of these vast majority. This is not a case like Nick's, where he's complaining about his counsel not putting on perjured testimony, or like Fretwell itself, where he's complaining about an objection that's no longer recognized by law. Mr. Apelt is complaining that he had a right to have counsel investigate and prepare before calling an expert that ultimately obliterated his entire defense. The right to have a defense counsel prepared to call a witness or prepared to investigate any aspect of the case is a bright-line rule recognized by this Court and by the Supreme Court. United States v. Turner, Tucker, and Wiggins are just some examples of this. The district court's focus on the result that Dr. DeMaio, the forensic pathologist in this case, that his testimony led to a more reliable result is misplaced. For example, defense counsel could disclose confidential communication with a client, a confession, for instance. That might lead to a more reliable result, but it would be a clear violation of a defendant's Sixth Amendment right to counsel. So that result-oriented view is not appropriate under Fretwell. And what Fretwell says is that the Sixth Amendment counsel, the right to counsel exists to give a fair trial. So you can't have a violation of that. You can't have an unfair trial if you're not entitled to the right. But as Williams v. Taylor says, Nix and Lockhart don't apply if the defendant is claiming deprivation of a right that the law recognizes. And here, that's what Rudy Oppelt is claiming. He's claiming he was denied the right to have his counsel do reasonable investigation and prepare before making a decision to call a witness. So traditional Strickland analysis applies. Under Strickland, trial counsel's failure to prepare and investigate before calling their pathologist fell below the objective standard of reasonableness, and it does undermine the confidence in the outcome of this case. If you look at excerpt of record 153, Dr. DeMaio was asked to address three things. Did Ms. Monkman's death occur at the scene? What was the order of the wounds that she received? And finally, was there evidence of more than one attacker? And this third item is key because everyone agrees defense counsel's strategy was to lay the blame of Ms. Monkman's death solely on Mr. Oppelt's brother Michael's feet. It's very difficult to envision a scenario where Rudy's counsel was aware of Dr. DeMaio's opinion on handedness, aware that Rudy was right-handed and Michael left, and still felt there was some benefit in calling DeMaio to the stand. The problem, a problem in the case, it seems to me, is that even if you assume that it was deficient performance, not to be aware of the handedness of your client, that there was just so much evidence that your client and his brother were both involved in this together, that it wouldn't have made any difference to the result. So how do you respond to that? Your Honor, I would say that you cannot underestimate the prejudice from evidence that Rudy was the, and I apologize for using first names, but just to avoid confusion, that Rudy was the actual killer. It's impossible to know how that affected the jury's opinion. Up until that point, all evidence was purely circumstantial. There was no DNA. The only forensic evidence was that a shoe print on Ms. Monkman's forehead was consistent with Michael's shoe. And even the testimony of the star witness, Anca Dorn, was that Michael confessed to her, she said she was there, didn't see or hear anything, but that Michael confessed to her that he killed Cindy and that Rudy, quote, just stood around looking stupid. Now, there's, of course, all the terrible facts of these two running around to stores and trying on watches and pretending they were going to buy cars. But again, Anca Dorn testified that to her, that was a game. At that point, she knew nothing about any conspiracy. There was no conspiracy to come to the United States and find a woman and marry her. And as to Rudy himself, it wasn't until the night before that Michael shared his plans with Rudy. Additionally, Michael was the sole beneficiary of the insurance policy. And he had, in fact, earlier told Anca, who he'd used to help him translate some things, that he didn't want Rudy to know about it because he didn't want to share the money. And so while there are some facts that are not favorable to Rudy in this case, there's certainly doubt that had the jury not heard this incredibly damaging testimony, and the difference is stark, the prosecutor's opening statement was not that Rudy was the actual killer. And by the end, she, who was totally prepared for Dr. DeMaio's testimony, and I think that's another point, while I have some sympathy for a defense counsel in this case and the late nature that they got Dr. DeMaio. The prosecutor had even less time and she was ready, and that's very clear from the record. And Dr. DeMaio's belief that he could determine handedness, that was readily available in his book, which the prosecutor had read prior to cross-examining him. That decision was so damaging, and it's shown by the prosecutor's closing statement, where she's able to seize on that and focus on that. How was the jury instructed in the case? What alternatives were given? The jury was given, there's no felony murder instruction in this case, which I think is an important point. There was a separate conspiracy count, which Mr. Appelt was also convicted of. And they were, in full candor, they were instructed under accomplice liability. But there was no felony murder. So they were given premeditated accomplice liability and then the separate conspiracy count. And so your theory is without the doctor's testimony, they might have done what? Without the doctor's testimony, confidence on, I believe we have to concede the conspiracy count. And we're not challenging that here. But under the first degree murder count, that confidence in that count is greatly undermined, because this evidence was damning for Mr. Appelt. It went, it took the case from being there as one assailant, and that assailant is Michael Appelt, to we've been arguing up to this point, there's one assailant, and oh my gosh, the witness just, our only witness just said that's our own client. And counsel had to scramble and try and say, well, we all know left-handed people that do some things with their right. And that was really the only thing they could come up with. Let me ask you this. I'm just not clear. If you concede the conspiracy to commit first degree murder, what difference would it make if we grant relief? What happens? Well, it makes a difference in Mr. Appelt's sentencing. He has his sentence, he was resentenced to life because he was found under Atkins. On both counts? He was, the conspiracy count remained 25 to life, and the state court judge found that the only choice that she had was whether to run those consecutive or concurrent, and she ran the first degree count consecutive to the conspiracy count. So if he has a big victory here, he'll be left with a 25 to life? Correct. And those could have some collateral consequences for Mr. Appelt, who is a German national. The consulate is involved in his case. It can also affect where he's housed and his security level and those things, as well as being up for parole. I doubt that. Really, I mean, he's convicted of one count of first degree murder versus two counts, and it changes his security or placement, but especially arising out of the same event. This is outside the record, but he's actually already changed security status. Even with his two counts? Even with his two counts. Does it make any difference? Being removed from death row. Going back to the Strickland analysis, I want to emphasize that this Court's decision in Bloom v. Calderon did not apply any Fretwell analysis, straightforward Strickland, and like this case here, counsel's failure to give Dr. DeMaio the information that he needed on handedness gave the prosecution the ammunition it needed to secure guilty verdicts, just like in Bloom. The State Court's decision in this case, the post-conviction counsel finding that this was not a colorable claim, was both unreasonable determination of facts in light of the evidence, as well as an unreasonable application of federal law, and I think this is best shown when you look at the State Supreme Court, Mr. Oppelt raised this ineffective assistance of counsel claim on direct appeal, and the State Supreme Court said, this isn't really the appropriate place to raise this, we haven't had an evidentiary hearing, but we can't say it's clearly meritless, and that's at excerpt of record 49. Then the post-conviction court gives a very limited decision where they find that the claims aren't colorable. They lump all of the ineffective assistance counsel claims together, and it's not really clear to me, reading their order, whether they found both prongs of Strickland for all of, or found that both prongs of Strickland weren't met for all of those claims, or one or the other, but they find it not colorable, and again, there's no evidentiary hearing here. So as Taylor v. Maddox tells us, findings without holding a hearing can be an unreasonable determination of facts. And again, the State Supreme Court said we can't find this meritless, there's no hearing, but that's exactly what the post-conviction court did. If there are no further questions, I'll reserve the remainder of my time. Roberts. Thank you. Ms. Stone. Thank you. Good morning. May it please the Court. My name is Jeff Sparks here, representing Respondents Appelese in this matter. The key question in this case is not whether the district court correctly relied on Fretwell in its analysis, but whether the district court was correct that the State of assistance claim was an unreasonable application of Strickland. And in this case, given the overwhelming evidence of the petitioner's guilt. So you agree that it shouldn't have relied on Fretwell? Well, in light of the Supreme Court's recent decisions, it does seem to have given that case a very limited and narrow application. In light of those, this doesn't seem to be the type of case where it would apply. But in any event, given the strong evidence of petitioner's guilt, even without DeMaio's testimony, which really in context was relatively insignificant, there's no reasonable possibility that the jury could have reached a different result without that testimony. DeMaio's testimony was far from the strongest evidence against the petitioner. And in fact, given the accomplice liability instruction, it was really irrelevant for his conviction whether or not Michael or petitioner actually stabbed and killed the victim in this case. There is evidence going back to both Petitioner and his brother's efforts to convince women to marry them very quickly. There was Petitioner's rental of the car with the large trunk immediately after his brother Michael obtained the insurance policy, canceling that reservation when the policy initially was rejected, and then when the policy was finally accepted going back and actually renting the car. There is the two of them going together to purchase a crossbow just several days before the murder. In addition to Doran's testimony, which put Petitioner at the scene of the murder as well. Sotomayor, you're arguing that he would have been convicted of, what, accomplice liability? Correct. I mean, this is a very strange situation. You're not really disputing that the performance of the lawyer in not knowing what the expert was going to actually lend support to the guilt of the client. You're not contending that that was an okay performance, are you? Well, given the record of this case, in hindsight, it does look bad. Yeah. That's true. Looking at it from counsel's perspective at the time, it's not quite as clear that it was an unreasonable decision. There was no indication that the handedness of the assailant was going to be an issue. If it was, presumably that's something the prosecutor could have gone into with her medical examiner in his testimony. Well, how did the expert help him, then? Help the prosecution? No, the defense. Help the defense? Well, the idea was without his testimony, essentially the defense was going to be left only arguing. I think we're just, why did they call this guy? Why did they call him? Well, he was to support the defense theory that it was Michael who did the killing and to support their defense theory that the petitioner was simply uninvolved in the murder. Well, what testimony did he give that was supportive? Well, there wasn't any, was there? He said he was going to say it was a one-person job, right? That's correct. And then they were going to argue that the one person was the other brother. In light of the cross-examination, which brought out his testimony that the person at least used their right hand, whoever did the stabbing, that was harmful. But before that, you know, on direct examination It didn't do much. It didn't, it wouldn't have done much. I'm just trying to, it seems that the witness didn't help and hurt in terms of what the lawyer hoped to get out of it. The Arizona Supreme Court didn't give us any very reasoned analysis of why this was not defective, that it did not violate Strickland, did it? No, the State Court's decision on this claim was basically a summary decision. The Court did state that Petitioner had not established a colorable claim on either deficient performance or prejudice, but did not offer any analysis. Okay. So we don't really know why. We don't have any specific analysis or findings to defer to. And the district court applied Fretwell, and you are now agreeing that that was inappropriate. The district court did apply Fretwell, but it also alternatively addressed, you know, a more traditional prejudice analysis under Strickland in finding that given the overwhelming evidence, there was no prejudice in this case. And that was separate from its analysis under Fretwell. And again, given the strong evidence of Petitioner's actions both before and after the murder occurred, especially in light of the accomplice liability instruction, the district court was correct in concluding that there was no reasonable probability of a of a of what, of it affecting the first-degree murder conviction? Correct. Correct. Is that right? It is. Are you arguing that he would have been convicted of first-degree murder if there were no, if the evidence of his right-handedness was not, if the expert had not testified? He would have. And that's because the evidence very clearly established that Petitioner was just as involved with this plot as his brother Michael. His brother Michael was the one who married the victim, but Petitioner was with him at every step of the way in helping him to plan and carry out this plot and to help cover it up afterwards. So given that evidence, and especially the accomplice liability instruction Why isn't that a show of conspiracy? Well, it additionally proves conspiracy. However, the more specific actions that would establish Petitioner's guilt of I guess what I'm trying to find out is what specific evidence is there that the Petitioner did this? Actually, was it more specific? What evidence do you have that he was an accomplice to this murder and therefore was chargable as a principal? Is that what you're saying? No, I'm asking that he was the actual murderer, that he did it. Not that he was an accomplice, but that he did the blow. Well, there was no direct evidence other than Dr. DeMont's testimony. That's not required under the accomplice liability statute here. The jury didn't need to conclude that he actually did stab the victim. So given the evidence that he was there aiding and assisting. He would have been convicted of conspiracy. Conspiracy as well as first-degree murder, whether as an accomplice or a principal. Okay. Got it. Okay. Got you. Thank you. Thank you. Ms. Stone. I just want to address again that the State's contention that there was evidence that was stronger than this testimony of Dr. DeMaio. The prosecutor pointed out correctly in her closing argument that this was uncontroverted evidence that Rudy was right-handed, Michael was left, and that the killer was right-handed. There was no other evidence in this trial that was uncontroverted about Rudy's involvement. Even their own star witness, again, Anca Dorn, said this was a game to me. It was a game to Rudy. So the jury could have believed her testimony that all of this running around, trying on watches and clothes and cars and courting women was a game. Her testimony was that Rudy didn't know anything until the night before the murder. And again, that Rudy just, Michael told her that Rudy stood around looking stupid. So much of the evidence that the State put on was challenged even by their own witness. Prosecutor, correct? Let me tell you what I'm having a hard time just kind of conceptualizing. I must be overlooking something. If you agree that there's enough evidence for conspiracy to commit first degree murder, and if he's present at the crime scene where the murder occurs on the night of the murder, looking around stupid is not really a defense to be an accomplice. I mean, he appears to be there aiding and abetting. I don't quite understand how you can have one and not the other under these facts. Well, again, it's two different, there was a claim in this case of sufficiency of the evidence. I know, but you're telling us there is sufficient evidence of a conspiracy. You're telling us he was at the scene. You're telling us that the best he has is that he was standing around looking stupid. I don't see how that defeats a finding that he would be liable as an accomplice. I don't think we can make the argument that there could have been no finding, and that's why we're not raising the sufficiency of the evidence argument any longer. But there's certainly the argument that the jury very well might have made a different decision. How? How? In those facts, how? Because when they're told that Mr. Oppelt is right-handed and the killer was right-handed, that makes the first degree murder decision very easy. As the guy who does the stabbing. Okay. Let's take that off the table. How about as an accomplice? We don't we cannot know what the jury would have decided. They may have believed Onkredorn's testimony. Again, that stabbing probably also played into the conspiracy account, conspiracy count that just isn't before this Court. It wasn't raised. Are you arguing that there wasn't evidence that he was there? No. That seems to be established before the Court. But what he intended, what he knew, what he actually did, is not as clear, and the jury could have found, even based on the State's witnesses, and that's why I had such an issue with the State's contention that not calling a witness would be presenting no defense at all. It's very clear in this case that Mr. Alpelt would have been better off without Dr. DeMaio's testimony. The medical examiner did not testify to handedness that the State called. So State rested, defense could have rested. There would have been no testimony of handedness before the Court. Got you. Thank you very much. Thank you, too, sir. The case just argued is submittable standard of assess for this session.
judges: Schroeder, Silverman, Bea